UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CLAIRE H.,

                       Plaintiff,

          v.

LELAND DUDEK,[1] Acting Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION**
**and**
**ORDER**

**22-CV-409-LGF**
**(consent)**

APPEARANCES:       HILLER COMERFORD INJURY & DISABILITY LAW PLLC
                      Attorneys for Plaintiff
                      IDA M. COMERFORD,
                      KELLY ELIZABETH LAGA-SCIANDRA, and
                      KENNETH R. HILLER, of Counsel
                      6000 North Bailey Avenue
                      Suite 1A
                      Amherst, New York  14226

                      MICHAEL DiGIACOMO
                      INTERIM UNITED STATES ATTORNEY
                      Attorney for Defendant
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York  14202
                           and
                      JOHN THOMAS MOLINARO
                      Special Assistant United States Attorney, of Counsel
                      Social Security Administration
                      Office of General Counsel
                      6401 Security Boulevard
                      Baltimore, Maryland   21235

---

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 16, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 1, 2024, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on November 3, 2022 (Dkt. 10), and by Defendant on January 3, 2023 (Dkt. 12), as well as on Plaintiff's motion to substitute parties filed by Plaintiff's attorney on August 23, 2024 (Dkt. 19).

## BACKGROUND and FACTS[2]

Plaintiff Claire H. ("Plaintiff"), commenced this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA") on July 31, 2014 ("the application date"), for Social Security Disability Insurance benefits ("DIB") under Title II of the Act, listing on the application two children under the age of 18 including "N.H." and "C.H."  AR[3] at 198-205, 461-87.  Plaintiff alleges she became disabled on July 10, 2009, based on bipolar, depression, anxiety, post-traumatic stress disorder ("PTSD"), and arthritis.  AR at 199, 236, 239.  Plaintiff's application initially was denied on September 26, 2014.  AR at 139-44.  On October 16, 2014, Plaintiff timely filed a request for an administrative hearing. AR at 145-46.  On January 5, 2017, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Act.  AR at 217-

---

[2] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for substitution and for judgment on the pleadings..
[3] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant on August 24, 2022, in two parts (Dkts. 6 and 7).

27.  On January 30, 2017, an administrative hearing ("the first hearing") was held in Buffalo, New York, before Administrative Law Judge ("ALJ") Lynette Gohr ("ALJ Gohr"). AR at 69-109.

During the first hearing, Plaintiff testified that none of her children had lived with Plaintiff since December 2012, at which time Plaintiff became homeless.  AR at 80-81. According to Plaintiff, upon moving from Arizona back to the western New York area in 2013, she was arrested on a bench warrant for not appearing in traffic court and held for seven days.[4]  *Id*. at 94.  After being released, Plaintiff attempted to have her children returned but was denied because she could not find suitable housing.  *Id*. at 94-95.  As of January 30, 2017, Plaintiff's children, then ages 6 and 16, lived with Plaintiff's sister in Williamsville, New York.  AR at 93-94.

On April 14, 2017, ALJ Gohr issued a decision denying Plaintiff's claim, AR at 9-30 ("the first ALJ decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 195-97 (repeated at 552-73).  On May 29, 2018, the Appeals Council denied Plaintiff's request to review the first ALJ decision, rendering it the Commissioner's final decision at that time.  AR at 1-6 (remailed to Plaintiff on June 20, 2018, AR at 574-79).

In April 2018, Plaintiff gave birth to her third child, a daughter "I." ("I.").[5]  AR at 1145, 1159, 1162.  As of June 11, 2018, Plaintiff's eldest child, "C.H.," lived away at college, while N.H. was in foster care, and Plaintiff's youngest child, I., lived with Plaintiff.  AR at 1125.  Although Plaintiff's sister had applied for custody of N.H. the application was terminated when Plaintiff's sister was charged with neglect for smoking crack.  *Id*. at 1125, 1145, 1182.  Plaintiff continued seeking return of custody of N.H.  *Id*.

---

[4] The facility where Plaintiff was held or detained is not identified in the record.
[5] No last name for "I." is in the record.

On July 30, 2018, Plaintiff commenced an action in this court seeking review of the first ALJ decision denying Plaintiff disability benefits.  *See Hershey v. Comm'r of Soc. Sec.*, 18-CV-833-JJM (W.D.N.Y.) ("*Hershey*").  In a Decision and Order filed March 30, 2020, the first ALJ decision was vacated in part and the matter was remanded for further administrative proceedings.  *Hershey*, 2020 WL 1514749 (W.D.N.Y. Mar. 30, 2020).

On August 21, 2021, Plaintiff's parental rights to N.H. were terminated when he was adopted by one Kim Harrigan ("Harrigan").  On September 23, 2021, upon remand from this court, a second administrative hearing ("second hearing") was held before ALJ Stephen Cordovani ("ALJ Cordovani" or "the ALJ") in Buffalo, New York via teleconference.  AR at 488-543.[6]  Appearing by telephone and testifying at the hearing were Plaintiff, represented by Anthony DeMarco, Esq., impartial medical expert Steven Golub, M.D. ("Dr. Golub"), impartial psychiatric expert Chukwuemeka Efobi, M.D. ("Dr. Efobi"), and impartial vocational expert ("VE") Melissa Fass-Karlin ("the VE").  As of the second hearing, Plaintiff lived alone in an apartment in Niagara Falls, New York, but Plaintiff had lived for several years with I. and I.'s father until relinquishing custody of I. to the father recently before the second hearing.  AR at 472, 529-30.  On January 31, 2022, ALJ Cordovani issued a decision denying Plaintiff's claim ("second ALJ decision").  AR at 461-87.  On May 31, 2022, Plaintiff commenced this action.

On November 3, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 10) ("Plaintiff's motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum").  On January 3,

---

[6] A previous hearing held before ALJ Cordovani on February 23, 2021 was adjourned to permit Plaintiff to obtain counsel.  AR at 544-51.

2023, Defendant moved for judgment on the pleadings (Dkt. 12) ("Defendant's motion"), attaching the Commissioner's Memorandum in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 12-1) ("Defendant's Memorandum").  Filed on January 24, 2023, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13) ("Plaintiff's Reply").

On April 5, 2024, a Suggestion of Death Upon the Record Pursuant to [Fed.R.Civ.P.][7] Rule 25(a)(1) was filed (Dkt. 14) ("the suggestion of death"), advising of Plaintiff's death.  On July 5, 2024, Plaintiff filed a motion to extend the deadline for moving to substitute a relative of Plaintiff as Plaintiff in this action (Dkt. 17), which was granted on July 8, 2024 by Text Order (Dkt. 18), setting August 23, 2024 as the deadline for such motion.  On August 23, 2024, Plaintiff's counsel filed a motion to substitute as Plaintiff N.H., Plaintiff's biological son, as represented by N.H.'s adoptive mother Harrigan (Dkt. 19) ("Plaintiff's motion for substitution").  Plaintiff's motion for substitution is supported by the Affirmation of Kelly Laga-Sciandra in Support of Motion for Substitution of Party (Dkt. 19-1) ("Laga-Sciandra Affirmation"), the Memorandum in Support of Plaintiff's Renewed Motion to Substitute Party Plaintiff (Dkt. 19-2) ("Plaintiff's Substitution Memorandum"), a statement by Kim Harrigan (Dkt. 19-3) ("Harrigan Statement"),[8] and screen shots from New York State Courts Electronic Filing pertaining to a file search in Erie County Surrogate's Court (Dkt. 19-4).  On August 27, 2024, a copy of Plaintiff's death certificate establishing Plaintiff died on October 19, 2022, in

_____

[7] Unless otherwise indicated, bracketed material has been added.
[8] As filed on August 23, 2024, the Harrigan Statement was not signed, but was refiled on February 7, 2025 (Dkt. 23), with Harrigan's signature.

Buffalo, New York was filed (Dkt. 20) ("the death certificate").  On February 12, 2025,

Defendant filed Defendant's Response to the Motion for Substitution of Party (Dkt. 24)

("Defendant's Substitution Response").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion for substitution is GRANTED; Plaintiff's

motion is DENIED; Defendant's motion is GRANTED.


## DISCUSSION

**1.    Motion to Substitute**

Plaintiff's motion for substitution seeks to substitute for Plaintiff her biological son

N.H., represented by N.H.'s adoptive mother, Harrigan, Plaintiff's Substitution

Memorandum at 1, arguing that as Plaintiff's son, N.H. is, under New York law, a

distributee of Plaintiff and thus is entitled to Plaintiff's DIB benefits that were past-due at

the time of Plaintiff's death.  *Id*. at 2-3.  Defendant does not oppose Plaintiff's motion for

substitution and concedes that both applicable federal and New York law allow for minor

children, as distributees, to receive Plaintiff's past-due benefits, as well as that federal

law permits the guardian of a minor to sue on behalf of the minor, Defendant's

Substitution Response at 4-6, but defers to the court to determine whether Harrigan is a

proper party for substitution in this action.  *Id*. at 6.

Plaintiff's Fed.R.Civ.P. 25(a)(1) ("Rule 25__"), provides

> If a party dies and the claim is not extinguished, the court may order substitution
> of the proper party.  A motion for substitution may be made by any party or by the
> decedent's successor or representative.  If the motion is not made within 90 days
> after service of a statement noting the death, the action by or against the
> decedent must be dismissed.

Fed.R.Civ.P. 25(a)(1).

In the instant case, the court observes that although Plaintiff claims DIB under Title II and SSI under Title XVI, past-due benefits under Title XVI may only be paid to a surviving spouse or minor child who is also disabled and living with the decedent at the time of death.  *See* 20 C.F.R. § 416.542(b)(2).  Because Plaintiff was not survived by a spouse, and there is no claim that any child, let alone a disabled child, was living with Plaintiff at the time of Plaintiff's death, Plaintiff's claim for SSI under Title XVI was extinguished by her death.  *See Kim H. V. Comm'r of Soc. Sec.*, 2022 WL 3580125, at * 1 (W.D.N.Y. Aug. 19, 2022) (SSI benefits are not payable to the estate of any underpaid claimant nor to any survivors of the claimant other than as provided for by 20 C.F.R. § 416.542).

Nevertheless, if a DIB claimant dies before any DIB payment under Title II is made, such benefits can be made to the child of the deceased claimant if no spouse survives.  42 U.S.C. § 404(d)(2) (providing for DIB owed to a claimant who dies prior to any payment shall be to the child or children of such deceased claimant); 20 C.F.R. § 404.503(b)(5) (providing for payment of underpaid DIB to which the deceased claimant was entitled as of the date of death to be paid to any surviving child).  *See also Perlow v. Comm'r of Soc. Sec.*, 2010 WL 4699871, at *1 (E.D.N.Y. Nov. 10, 2010) ("[T]he Act expressly provides for Plaintiff's Social Security benefits to be paid to his survivors in the event he dies before collecting his underpayments." (internal citations omitted)). Plaintiff's motion for substitution is therefore addressed only with regard to the Title II claim which survives Plaintiff's death in satisfaction of the first requirement for substitution under Rule 25(a)(1).

The Rule 25 motion to substitute was required to be made within 90 days of the filing of the suggestion of death on April 5, 2024, *i.e.*, by July 4, 2024.  The Text Order granting Plaintiff's motion to extend the deadline, however, provided August 23, 2024 as the deadline for such motion.  Dkt. 18.  Accordingly, Plaintiff's motion for substitution was timely filed on August 23, 2024 as required by the Text Order and thus is timely with regard to Rule 25(a)(1).  The court next considers whether Harrigan qualifies as Plaintiff's successor or representative so as to be a "proper party" under Rule 25.

"'A 'proper party' ... is either (1) a successor of the deceased party—a distributee of an estate if the estate of the deceased has been distributed at the time the motion for substitution has been made, or (2) a representative of the deceased party—a person lawfully designated by state authority to represent the deceased's estate.'"  *Herrera-Castro v. Trabajamos Cmty. Head Start, Inc.*, 2017 WL 549584, at *1 (S.D.N.Y. Jan. 30, 2017) (quoting *Lungu v. New Island Hosp./St. Joseph Hosp.*, 2012 WL 2050205, at *5 (E.D.N.Y. June 4, 2012)) (emphasis omitted).  Whether a person is a proper "successor or representative" of the decedent is typically determined based on the law of the forum state, here, New York.  *Garcia v. City of New York*, 2009 WL 261365, at * 1 (E.D.N.Y. Feb. 4, 2009) (citing *Graham v. Henderson*, 224 F.R.D. 59, 64 (N.D.N.Y. 2004)).  Where, as here, a plaintiff dies destitute, there would not be any estate to distribute so the party seeking substitution as successor and who is not also a representative of the plaintiff's estate need not show that the estate has been distributed before serving as successor.  *Herrera-Castro*, 2017 WL 549584, at * 1.

In the instant case, Plaintiff's counsel asserts that Plaintiff died intestate and her estate did not pass through New York State Surrogate's Court.  Laga-Sciandra

Affirmation ¶ 5.  Harrigan states that Plaintiff died intestate and destitute, Harrigan Statement ¶ 9, survived by two minor children including N.H. who commenced living with Harrigan as a foster child in September 2017, prior to which N.H. resided in a group home.  *Id*. ¶¶ 3, 4, 7.  On August 21, 2021, Harrigan adopted N.H.  *Id*. ¶ 8.  According to Harrigan, "[s]ince Ms. H[ ]'s passing, I have retained custody and am the legal guardian of N.H."  *Id*. ¶ 10.  Harrigan further maintains that N.H. is Plaintiff's "closest relative and her natural next-of-kin."  *Id*. ¶ 11.  Plaintiff's counsel argues that N.H., represented by his adoptive mother, Harrigan, should be substituted for Plaintiff in this action because N.H. is a distributee of Plaintiff's estate and thus Plaintiff's successor.  Plaintiff's Substitution Memorandum at 3-4.

The Act specifically provides for payment of past-due benefits to survivors or heirs when the eligible claimant dies before any past-due benefit payment is made pursuant to a specified order of priority to wit, and as relevant, a surviving spouse, then children of the deceased.  *See* 42 U.S.C. § 404(d).  Although Plaintiff left no surviving spouse, she was survived by three children including C.H., N.H., and I. who have the highest priority under the Act for entitlement to any underpayment, *i.e.*, past-due benefits under the Act.   Because Plaintiff seeks to substitute N.H. as Plaintiff, the court must determine whether N.H. qualifies as a distributee under New York law so as to be considered Plaintiff's successor.

N.H., as Plaintiff's child, may be a distributee of Plaintiff's estate pursuant to N.Y. Estates Powers & Trust Law which, as relevant, provides that if a decedent is survived by issue, but no spouse, the whole estate is distributed to such issue by representation. N.Y. E.P.T.L. § 4-1.1(a)(3).  Plaintiff's argument, however, overlooks the fact that N.H.

was adopted by Harrigan on August 21, 2021, Harrigan Statement ¶ 8, prior to Plaintiff's

death on October 19, 2022.  Significantly, N.Y. E.P.T.L. § 4-4.1(d) provides that "[t]he

right of an adopted child to take a distributive share and the right of succession to the

estate of an adopted child continue as provided in the domestic relations law."  As

relevant, N.Y. Dom. Rel. Law § 117 provides that with certain exceptions for intrafamily

adoptions, "[t]he rights of an adoptive child to inheritance and succession from and

through birth parents shall terminate upon the making of an order of adoption . . . ."

N.Y. Dom. Rel. Law § 117(b).[9]

Here, Harrigan's statement is devoid of any definitive statement that Harrigan's

adoption of N.H. falls within any of the intrafamily adoption exceptions that would

preserve N.H.'s right to inherit as a distributee of his biological mother so as to be a

successor to Plaintiff.[10]  Nor is there any indication why there was no attempt to

substitute as the proper party either N.H.'s older brother, C.H., or N.H.'s younger sister,

I.[11]  However, given that in the absence of such information, the court cannot definitively

---

[9] The intrafamily adoption exceptions preserve "the rights of an adoptive child to inheritance and succession from and through either birth parent" where
     (1) the decedent is the adoptive child's birth grandparent or is a descendant of such grandparent, and
     (2) an adoptive parent (i) is married to the child's birth parent, (ii) is the child's birth grandparent, or (iii) is descended from such grandparent . . . .
N.Y. Dom. Rel. Law § 117(e).

[10] The court notes that the parties do not discuss whether a separate application was ever made under Title II for child insurance benefits for any of Plaintiff's children as provided for by 42 U.S.C. § 402(d), or the effects of Plaintiff's death or, with regard to N.H. the effect of N.H.'s adoption on such application. *See Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 547 (2012) ("Congress amended the Social Security Act in 1939 to provide a monthly benefit for designated surviving family members of a deceased insured wage earner. 'Child's insurance benefits' are among the Act's family-protective measures. 53 Stat. 1364, as amended, 42 U.S.C. § 402(d). An applicant qualifies for such benefits if she meets the Act's definition of 'child,' is unmarried, is below specified age limits (18 or 19) or is under a disability which began prior to age 22, and was dependent on the insured at the time of the insured's death." (quoting 42 U.S.C. § 402(d)(1)).

[11] The papers supporting Plaintiff's motion for substitution reference only Plaintiff's children N.H. and I. who were "minors" at the time of Plaintiff's death.  Plaintiff's Substitution Memorandum at 2-3; Harrigan

determine that no intrafamily adoption exception applies and there is a remote chance

that N.H. may qualify as a distributee of Plaintiff if N.H.'s adoption by Harrigan qualifies

under New York law as an intrafamily adoption, the court, for the purposes of this

action, finds N.H., represented by Harrigan, should be substituted as the proper party in

this action.  *See S.E.C. v. Schiffer*, 2001 WL 504860, at **1, 3 (S.D.N.Y. May 11, 2001)

(granting summary judgment in favor of plaintiff against, *inter alia*, defendants who were

substituted for deceased defendants because substituted defendants were the

"potential" personal representatives/ administrators of, and/or successors to, the legal

and/or equitable interest in the deceased defendants' estates).  Plaintiff's motion for

substitution is GRANTED.

## 2.    Disability Determination

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In

reviewing a final decision of the SSA, a district court "is limited to determining whether

---

Statement ¶¶ 3-4.  The failure to also reference Plaintiff's eldest child, C.H., who, at the time of Plaintiff's death, would no longer have been a minor, suggests that Plaintiff believed, erroneously, that C.H. was not also a distributee of Plaintiff and therefore could not be Plaintiff's successor.  Federal law, however, does not provide that past-due Title II benefits can be paid only to a deceased claimant's minor children, nor does New York law limit the definition of distributees to only minor children.

the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[12] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining

---

[12] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful

work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920.

  In the instant case, Plaintiff argues the second ALJ decision is erroneous because the ALJ failed to consider Plaintiff's migraines a severe impairment at step 2 of the five-step sequential analysis and, thus, failed to incorporate any associated limitations into the RFC formulation. Plaintiff's Memorandum at 13-16. Plaintiff also argues the ALJ failed to consider the impact of the frequency of her treatment on Plaintiff's ability to maintain an expected work schedule. *Id*. at 16-19. In opposition, Defendant argues substantial evidence in the record supports the ALJ determination that Plaintiff's migraines were not a severe impairment, Defendant's Memorandum at 6-12, and that Plaintiff has not pointed to any evidence establishing that her treatments and appointments precluded her from performing full-time work. *Id*. at 12-15. In further support of her motion, Plaintiff characterizes Defendant's arguments as "create[ing] justification on post hoc facts and reasoning not made by the ALJ," and argues the ALJ failed to evaluate recommendations by Plaintiff's treatment providers that she treat her migraines by resting. Plaintiff's Reply at 1-2.

The lack of merit to Plaintiff's arguments is largely based on the fact that the earliest medical records within the administrative records are dated April 22, 2014, AR at 508 (referencing AR at 257), *i.e.*, after March 31, 2014, Plaintiff's date last insured for purposes of DIB. This is particularly relevant given only Plaintiff's DIB claim survives her death such that if Plaintiff cannot establish disability by March 31, 2014, then this action is without merit. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1) (defining "fully insured individual" for purposes of Title II disability insurance benefits); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (applicant for disability insurance under Title II must be disabled on or before date last insured).

### 1.    Migraines

Plaintiff argues that at step 2 of the five-step sequential evaluation the ALJ's determination that Plaintiff's migraine condition was not a severe impairment was in error that was not harmless because the ALJ thereafter failed to incorporate limitations posed by Plaintiff's impairments into the RFC assessment.[13] Plaintiff's Memorandum at 13-16. In opposition, Defendant argues the ALJ's decision that Plaintiff's migraine condition was not a severe impairment is supported by substantial evidence in the record. Defendant's Memorandum at 6-12. In further support of her motion, Plaintiff

---

[13] The ALJ's RFC formulation in the second ALJ decision provides that Plaintiff could perform a full range of work at all exertional levels, but with several non-exertional limitations including that

The claimant can understand, remember and carry out simple instructions and tasks; no supervisory duties, can perform independent decision-making for simple unskilled work, can experience normal changes in work routine and processes for simple unskilled work; can maintain attention and concentration in two hour increments and maintain regular attendance at work for simple, unskilled work. The claimant can have occasional interaction with supervisors, co-workers and the general public.

AR at 471.
Here, it is undisputed that this RFC does not contain any limitations attributed to Plaintiff's migraines.

argues recent caselaw failed to evaluate "recommendations" that Plaintiff should rest when she had a migraine.  Plaintiff's Reply at 1-2.

As discussed above, only Plaintiff's DIB claim under Title II of the Act survived Plaintiff's death.  Significantly, to be eligible for disability benefits under Title II of the Act, Plaintiff was required to establish she was disabled as of her date last insured, here, March 31, 2014.  *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (applicant for disability insurance must be disables on or before date last insured). Here, however, the administrative record is devoid of any medical records or other evidence establishing Plaintiff suffered with migraines prior to March 31, 2014; rather, the first time Plaintiff's migraines are mentioned in the record is on December 13, 2019. AR at 1909-12.  This is consistent with ALJ Cordovani's statement at the second hearing that Plaintiff's earliest medical records are from April 22, 2014, AR at 508 (referencing AR at 257), and a plain reading of such record shows no mention of migraines.  Accordingly, Plaintiff cannot establish that migraines were a severe impairment or even a non-severe impairment that must be considered in combination with severe impairments so as to establish disability as of her date last insured, March 31, 2014, based on migraines.

### 2.    Treatment and Absenteeism at Work

Plaintiff argues the ALJ failed to consider the impact of the frequency of Plaintiff's treatments on Plaintiff's ability to maintain an expected work schedule, particularly with regard to her attendance at individual and group therapy for her mental health impairments and substance abuse treatment, Plaintiff's Memorandum at 19, as well as her migraines which often required Plaintiff to rest.  Plaintiff's Reply at 1-2.  In support of

her argument Plaintiff relies on SSR 96-8p,[14] 1996 WL 374184, at *5 (July 2, 1996), which, requires the RFC assessment be based "on *all* of the relevant evidence in the case record," including, as relevant here, "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication). . . ." (italics in original).

The time required by Plaintiff for her treatment regime is critical to the disability determination because at the second hearing, the VE testified that there are no jobs available for anyone who would be off-task more than 10% of a workday, or absent more than one day per month.  AR at 539.  It is, however, Plaintiff's burden to establish disability, including that her RFC is more restrictive than that determined by the ALJ because, *inter alia*, attending her treatment appointments actually would require her to miss more than one day of work per month, *see Amy C. v. Comm'r of Soc. Sec.*, 2021 WL 1758764, at * 8-9 (N.D.N.Y. May 4, 2021) (observing it is the plaintiff's burden to point to evidence that her impairment would result in excessive absenteeism), or that dealing with migraines would require her to be off-task more than 10% of the work day). *See Elizabeth K. v. Comm'r of Soc. Sec.*, 2024 WL 1051822, at * 4 (W.D.N.Y. Mar. 11, 2024) (holding the plaintiff did not meet her burden of establishing her migraines would cause her to be off-task more than 10% of the work day).

Here, Plaintiff does not reference any evidence establishing that attending her treatment sessions would interfere with her ability to work; rather, such argument

---

[14] "SSR" refers to "Social Security Rulings" which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

speculates that treatment sessions are only available during certain hours, and that jobs which Plaintiff could otherwise perform are only available during those same hours. With further regard to Plaintiff's migraines, as discussed above, Discussion, *supra*, at 16, Plaintiff was not diagnosed with migraines until December 13, 2019, well after the date by which Plaintiff was required to establish disability for purposes of DIB, such that any time Plaintiff needed to treat migraines is irrelevant to her claim.

As for Plaintiff's therapy treatment, not only are the earliest medical record in the administrative record dated April 22, 2014, AR at 257, such record is devoid of any mention of Plaintiff's treatment protocol.  Of further significance is impartial psychiatric expert Dr. Efobi's testimony at the second hearing no inference or assessment as to Plaintiff's mental health impairment could be made without medical records pertaining to the period prior to April 22, 2014.  AR at 508.  Accordingly, there is no merit to this argument.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion for substitution (Dkt. 19) is GRANTED; Plaintiff's motion (Dkt. 10) is DENIED; Defendant's motion (Dkt. 12) is GRANTED.  The Clerk of Court is DIRECTED TO CLOSE THE FILE.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    March 11, 2025
          Buffalo, New York